The next case. Case number 145831, Horace Tyler v. Gayle Ray, et al. Federal argument not to exceed 15 minutes per side. Mr. Sutherland will be next. Good morning. May it please the court, I would like to reserve three minutes for rebuttal. My name is Scott Sutherland. I represent the Tennessee Attorney General's Office in the State of Tennessee's appeal for a grant of habeas corpus relief by the Middle District of Tennessee in this case. The petition for writ of habeas corpus in this case is barred by AEDPA's one-year statute of limitations and respectfully the district court erred in concluding that the petitioner here presented sufficient evidence of actual innocence in this case in these habeas proceedings to overcome the statute of limitations bar. While the district court correctly found that the petition in this case was filed outside AEDPA's one-year statute of limitations, nonetheless, the court proceeded to review the merits of the petitioner's claim, which it granted relief in addition to some other claims under the very narrow exception enunciated in the United States Supreme Court's decision in Schlupp v. Dello and cases decided after it that permits federal courts to review time-barred claims when a petitioner has made a sufficient showing of actual innocence. As this court knows, that standard is extremely high and what's necessary to permit review under this exception is well established and it requires two things. And those two things are it must be new evidence. The evidence presented to the district court must be new and the new evidence must be such that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. As this court has explained, the quality of the type of evidence that meets the criteria for this exception typically necessary to make the showing is, quote, exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. The Supreme Court has recognized that the circumstances under which this exception apply is rare and only applies in the extraordinary case. There's an alternative argument made about mandate dating. Can you address that? Sure, Judge Rogers. The issue You're right on that. We don't need to worry about whether they've met the standard that you just identified. You're correct. But respectfully, they're incorrect about that. The United States Supreme Court has always looked to the state rules of procedure to determine when a case is no longer pending for purposes of AEDPA's one-year statute of limitations. We've cited cases to the court in a letter of supplemental authority that indicate not only have Tennessee courts always applied the date on which the Tennessee Supreme Court denies an application for permission to appeal, but the federal district courts have as well. Frankly, I'm not aware of a single case in which this court has not applied that same date. Does Tennessee use mandates at all in their court system, or they just don't consider that as a factor in computing time? The answer to your question, Judge Sellers, is yes, Tennessee uses mandates, but Tennessee's courts have said that for purposes of determining when a state court decision is final and over, it is the date on which the Tennessee Supreme Court denies the application for permission to appeal. That was ascertainably not true in the cases where the Supreme Court referred to mandate? Well, those were state-specific cases, Judge Rogers. Lawrence v. Florida, Day v. McDonough involved Florida cases where mandate is the issue. It is under state law. Kerry v. Saffold was a California case where California law was applied, so it's a state law issue as to when the decision becomes final. It seems like a pretty esoteric thing to demand that criminal defendants be able to figure out. When the Supreme Court says mandate and they see a mandate, they've got to know that the law of Florida is different from the law of Tennessee. I guess that would go to equitable tolling or something like that. Well, there are two things that you can look at. It's an argument you all didn't even make in your reply brief. Well, on the equitable tolling issue, he still would have had to have shown that there were circumstances that prevented him from extraordinary circumstances under the second prong that would have prevented him. And what he alleged was there was some prison shutdown in his facility where he was, and the district court's opinion very clearly dismissed that by saying, for the six-day delay in filing, petitioner alleges a shutdown at his assigned facility but does not present proof for this assertion. So what the district court has done is looked at this evidence of actual innocence exception, and I think that the courts have made clear that even one day beyond this statute of limitations period shouldn't be tolerated unless it comes within one of these exceptions that have very specific requirements for tolling. And the glaring deficiency in the district court's opinion in this case, in its conclusions, is that the district court's opinion fails to even state the standard. It fails to state that there must be new evidence, which this was not, and that the new evidence, which must be such that it's more likely that no reasonable juror could have convicted in light of that evidence. And so the district court's opinion doesn't even mention that standard, and so therefore doesn't even apply the facts of this case to that standard. And if it had stated what the specific standard was, it could not have reached the conclusion it did because this was clearly not new evidence. This evidence was present in the state court proceedings. It was present and known to the parties at trial, and it was fully developed in state post-conviction proceedings. You're still arguing the timeliness of the petition. I am. Would you like me to move on? I don't know about my colleagues. I think moving on might be good. I think we probably have a pretty good handle unless Judge Seiler has a question. No, let's hear the merits of the case, assuming the district court might have been correct. Your Honor, the district court erred in concluding that the Tennessee Court of Criminal Appeals determination of the petitioner's ineffective assistance of counsel claim was an unreasonable application of Strickland. Applying the correct standard in Strickland v. Washington, the Tennessee Court of Criminal Appeals affirmed the ruling of the post-conviction court that trial counsel in this case was neither deficient nor was there prejudice that resulted by trial counsel's decision not to present this testimony, which we haven't discussed yet. But the testimony essentially was we had a co-defendant who made numerous statements from the beginning of this case, I wasn't involved at all, I was driving the getaway car and I was in the car but I was the only person, I was involved but there was somebody else who is now dead, a guilty plea in which he actually said that the petitioner was the shooter and he was the driver of the getaway car. Trial counsel put this co-defendant on the stand at trial and the jury heard his testimony. And not only did they hear his testimony, but they heard a taped statement that predated his guilty plea in which he had stated something differently than what he testified at trial. That was a video. It was a videotaped statement, Judge Seiler, where he gave it to the investigating detective. And so the quality of that evidence that was presented by trial counsel, a taped statement to the lead investigator in this criminal case, is pretty compelling evidence to the extent that there could be in light of the fact that this individual made numerous inconsistent statements. If his counsel had been put on to testify that the co-defendant said, no, I was the shooter, not the defendant, would the counsel have been subject to examination on the question of whether he had also made, he had heard the co-defendant make these other statements, that he was aware of these other statements? Judge Batchelder, absolutely. And I think beyond that even, counsel had told the trial attorney that he did not believe, based on his review of the evidence in this case, that it was his opinion that his client, the co-defendant's statement, that he was the shooter and the petitioner was not involved, was not supported by the evidence. And I think he not only would have been cross-examined on that, but he would have been cross-examined under the lay opinion rule to say, I've reviewed, have you reviewed the evidence in this case? And is your review of the evidence in this case consistent with Mr. Schultz, the co-defendant's contention that he is the shooter? And he could give lay opinion under the lay opinion rule, and then they could have, the state would have been able to highlight again the series of inaccuracies and inconsistencies. I've got to, I hope I've answered your question, Judge, but one of the things I think is really important here, if you look at the district court's opinion, is that this court's very aware of the standard. And the first thing that the district court said in his analysis of this claim was, upon consideration of the state court's findings of fact on this claim, the court is unable to conclude that the court's decision on this claim was reasonable. Now, the standard is not whether the district court concludes the state court's decision was unreasonable, but whether the state court decision was objectively unreasonable. And that standard is not stated in the analysis of that claim at all, and there is no finding. If you look at the language that the district court used, it did not even make a finding that it was objectively reasonable, and I don't think that this court could conclude that. And so I think that's a glaring deficiency as well in the district court's decision for failing to state the standard. My time's up. Thank you. Thank you. Thank you. May it please the court, my name is Andrew Brandon. I'm here today on behalf of Maurice Tyler, and I'm accompanied by Mr. Paul Botté. Your Honors, I do want to address the statute of limitations issue, but first I think it's important to mention a few facts that have been a bit overshadowed in the focus solely on Christopher Schultz's testimony, and those facts are just that, one, this was a very close case where even the state's evidence was extremely contradictory. Eyewitness testimony saying it was a Caucasian man, it was an African-American man, it was a light-skinned African-American man, it was a Hispanic man, different coat lengths, the state's star witness says, oh, I wish I could give you 911 dispatch operator, I wish I could give you a better description. He then says to the police, I've got a perfect description, and it's that guy in court today. This was, in fact, a close case. It was a winnable case on either side. Second, Your Honors, you have a lack of inculpatory forensic evidence. There's no gun, no fingerprints, no DNA, and you have the presence of some exculpatory forensic evidence. You have the jacket that some witnesses placed Mr. Tyler in that night, having no gunshot residue and testimony from a gunshot residue expert saying it would have been unlikely he could have cleaned gunshot residue off of the fabric cuff of that. Lastly, Your Honors, you have two witnesses that created a complete alibi. First witness says he was at the club that night, but he was my good friend, he borrowed my car and went back to my place. Second witness was the first witness's girlfriend, says, yeah, he showed up at my boyfriend's house, and, in fact, we sat on the couch and watched the movie Gladiator until about 3 o'clock, and I recognized the time because I was mad at my boyfriend for staying out too late. And so you have him not at the club during the time of the crime. And why this is all important, Your Honors, is that Christopher Schultz's testimony then connects the dots between all of that evidence. He explains why it would have been a white man doing the shooting. He explains why Maurice Tyler would have been seen at the club that night but then would not have been there during the time of the shooting, why somebody else would be there. But in his other versions, he identified that he was there. I mean, he has a couple of versions over time, right? Chris Schultz? No, Your Honor. In his first version, he said he wasn't involved. This is his first version when he has no counsel. He said Tyler was not involved. In his first version, he said he was not involved at all. He went into the police and said I hadn't... Schultz himself was not involved, right? Correct. And nothing about Mr. Tyler. The jury heard that. Yes, Your Honor. And in the second version, he said, I did it, I did it alone. And then at trial he testified, I did it with the help of a man named Earl Shannon who is now deceased. Right. Whoever did it had access to a car that both Tyler and Schultz would have had access to. Correct. If he wasn't there at all, that would be indirectly incriminating of Tyler. Yes, the car could be seen by the jury as incriminating. And when he pled, he did not say that he was the shooter. That's correct. He pled to the facts as alleged, or he assented to the facts alleged by the state, and that's the sort of crux of the argument. But that's exactly the inconsistency that needed to be sort of rehabilitated with his prior consistent statements. And his counsel would have said, absolutely, he was insistent. We had some conversation about whether or not we could plead sort of a no low plea or make some or no contest, but he was always insistent that he was the lone shooter. That was cumulative evidence, though, that the jury would hear, right? Your Honor, it was not cumulative evidence. The state has argued it's cumulative, but the very existence of an evidentiary rule allowing for, I mean, cumulative evidence is prevented by the rules of evidence, whereas prior consistent statements to rehabilitate alleged inconsistencies are absolutely allowed, showing that they are, in fact, not. It's a different type of evidence, so it's not cumulative. And, in fact, this is cumulative prior consistent statements. You could have a case where there's 40 prior consistent statements and the judge gets tired of hearing them after a while. Can't they be excluded as cumulative? I mean, it's not inherently contradictory that it could be both. I think I could imagine what Your Honor is suggesting. I think that that's true. However, in this case, you don't have anybody who could testify that Mr. Schultz has been consistently saying for the entirety of his process in this that Maurice Tyler was not involved. The crux of what we're trying to figure out here was whether his counsel was constitutionally ineffective for not putting prior counsel on the stand. And wouldn't that have required, if prior counsel had put him on the stand, knowing what he says he knew, namely, I don't believe him,  wouldn't that have rather put the prior counsel in a bad situation? He, after all, had him having pled under one set of facts and now having had Schultz plead under one set of facts. And now that same counsel, who doesn't believe another set of facts that Schultz is now saying, should have… I can't see how you don't have a real serious problem here of counsel having to put somebody on the stand whom he doesn't believe and doesn't think will testify truthfully. Your Honor, I don't understand how the state would propose to get in the testimony of Mr. Wing saying, yes, my client has consistently said this, but for the record, I don't personally believe it. I just don't think that evidentiarily speaking that could ever come in. You don't think that's admissible then? You're saying it's not admissible under the Tennessee rules? I don't believe it's admissible for someone to just say, contrary to all evidence I've heard, I have no basis for this other than my own personal opinion, but I don't believe it. Is a prior consistent statement admissible in Tennessee law substantively or is it just used to impeach another statement at trial? I believe it's admissible substantively. It's a little bit interesting because you don't have a… there's not a specific hearsay rule like there is in the federal evidence, but the case law that we've cited says that it can come in and it typically comes in to rehabilitate the witness. To rehabilitate him but not substantively. Impeachment. That's correct. It negates impeachment. But, Your Honor, I just want to point out that this impeachment issue, this credibility of Chris Schultz issue, it's not my issue. It's not Maurice Tyler's issue. It was the state's issue. That was their whole argument at closing argument. They say, why does he keep lying about this? Well, he didn't keep lying about the one issue that's important. In fact, he was consistent about Maurice Tyler not being involved. Well, if he lied about a bunch of things, how do we know that this is consistent? But that's precisely the point is that the jury would… I mean, I agree. I'm not saying that the jury couldn't convict if John Wing had testified. It's just they would have had the key evidence they would need to know about what Mr. Schultz is doing and to negate what the state was saying, which is he's lied a couple times, therefore he's a liar. If you've got a witness who can say, no, no, he has lied. Let me provide some context about this. One, the second lie, the plea, is not really a big deal because even during that he was insistent. We had some confusion about whether or not… Even if it wouldn't have been admissible for him to say, but I didn't believe him, he nonetheless could have been, if he had been put on as a witness, he certainly could have been examined, could he not, about whether he had also heard Chris Schultz saying things that were not consistent with this statement. I think he could have, but in the post-conviction testimony there was no suggestion that there was anything that didn't come out at trial, any sort of inconsistencies that would have been at issue. Even in the in-camera hearing that the court conducted, he explained what his position was and we have several glimpses of what he believed and it was very clear that he said Chris Schultz was always adamant about this. And one more point just on the merits, if I could, and that is just that the district court here correctly found that the TCCA's opinion was unreasonable and it's unreasonable because it says that Chris Schultz's or the lawyer's testimony could not have, quote, negated the presence of the prior inconsistencies. And it's true, you can't wipe it away, but the very existence of the rule about prior consistent statements presumes the existence of a prior inconsistency that you are addressing. And so it's patently unreasonable to say, no, no, no, it's got to sort of annihilate that entirely, which is negate the presence of it. That's not what the rule says and it's not what needed to happen here. What needed to happen was for one juror to believe Chris Schultz. If that happened, then the entirety of the case would have fallen into place. Again, all of that potentially exculpatory evidence. But did Chris Schultz testify at Tyler's trial? Yes, he did. And did you have one jury who believed that? No, no, Your Honor, and precisely because the state made this the key issue, Chris Schultz's credibility. He lied before, he must be lying now. That was their whole case. And so your whole case is, but if the jury had known that he told his lawyer that he himself was the shooter, they would have known that he wasn't lying on that despite his other statements. If the jury had heard that he consistently stated that throughout his entire representation, including on the morning when he pled guilty, which was the source of the state's key bit of impeachment evidence, including that time, then yes, one juror would have believed that this is the guy who did it. And even the state today recognizes that it was fairly strong evidence that he did it. Some people may have believed it, but then the state hammered home this impeachment, and this absolutely would have helped, and one juror could have been turned. It wouldn't have been enough to meet the actual innocence exception to the statute of limitations, though, would it? I know you don't want to disavow what the district court says, but do you have another argument for the statute of limitations problem? Yes. Our argument is certainly that Mr. Tyler did not violate the statute of limitations. Rather, he filed in time. The state alleges he was merely six days late, but in fact he filed within the time, and that time is determined according to the Supreme Court, according to recent cases, Lawrence, Holland. Tennessee cases? Both Lawrence and Holland were not Tennessee cases. That's the operative distinction. I disagree. Lawrence stated specifically when the mandate runs. San Martin, an 11th Circuit case, says the EDPA clock resumes running when the state's highest court issues its mandate, disposing of the motion for post-conviction relief. What state was that? San Martin, I think, was Florida as well. I think that was Florida as well. I don't have a case. Are there any cases that say the clock starts to run when the mandate issues in Tennessee? I don't have one, and the state has cited the two district court cases. But, frankly, those are wrong. They do not interpret Lawrence correctly. Lawrence says that the period commences when no other state avenues for relief remain open. What we're saying here, and what Lawrence was really saying, is that we need to know, petitioners, the courts, need to know when federal intervention is appropriate. When does the federal government have some interest in this after the state is done? And all we have to do to answer that is look to the Tennessee Supreme Court, which says in its mandate, it says, this action signifies the end of the appeal. That's what the mandate says. And there's no reason to distrust. It says the reason is because they don't treat it that way within their own system. They treat the date of the judgment rather than the date of the mandate for purposes of further review within their system. Again, that's not what the Supreme Court's mandate says. The mandate itself says this action signifies the end of the appeal. He cites rules or court cases or what for that? There are TCCA opinions that say that. But this is a federal question, Your Honor. The question is, under Lawrence, under 2244D2, what does it mean to still have a case pending in state court? And what it means, according to Lawrence, is when there's no other opportunity for further relief. We know there are other opportunities for further relief, and in this case, after the denial of PTA or permission to appeal, excuse me, because as we've offered the court examples of where the Supreme Court is still considering, they deny requests for rehearing as if to say, you could have, I mean, they could have said, no, we're not going to hear that request for rehearing. They said, no, we deny it. So that is an example of where the court still has the power to reconsider the matter. Thank you, Your Honors. Thank you. Just briefly, in response to the last thing, it's not a federal question. It's a state law question, and the United States Supreme Court has recognized that repeatedly. It recognized it in Lawrence v. Florida. It recognized it in Kerry v. Saffold. It recognized it in Day v. McDonough. Every one of those cases looked to what the state courts in the states where those cases came out of to determine when a case is no longer pending. And they've also, so Tennessee cases have consistently held that it is the date on which the Tennessee Supreme Court denies an application for permission to appeal. What's the effect of that language that your opponent has talked about, saying this is a final judgment when the mandate comes out? Well, I think we have to look at what the state courts say about their rules. And I don't want to get into things that aren't in the record, but the state courts have said, here are our rules. Our rules are, these cases are no longer pending, and they are final, when the Supreme Court denies application for permission to appeal on that date, not the date of the mandate. They specifically say not the date of the mandate. I do want to, I think it's important to highlight again that the district court did not even make, did not even discuss the standard for evaluating the state court's decision and its analysis of the claim on which it granted relief. The district court's statement was that upon consideration of the court's findings of fact upon this claim, the court is unable to conclude that the Tennessee court's decision on this claim was reasonable. That's not the same as saying... We can do that de novo though, right? Yeah. So if we stated it wrong, we can state it right. How does that change the argument? Well, because if you apply the correct standard, Judge Rogers, there's no way you can reach the same decision that the district court did. The appropriate standard, which this court would apply, is that it has to be an objectively unreasonable. As this court has said... We're pretty familiar with that standard. I know you are. So what are you saying that we are specifically looking at to determine whether the state court was objectively unreasonable? Well, looking at the fact that they concluded that based on the trial attorney's testimony, he said, I put the co-defendant on. I put a videotaped statement that predated his guilty plea on. Based on my observations of the jury and the court and the proceedings at the time and the way that went, there was some very specific testimony about that, that he thought that that taped statement was very moving. It actually caused an event in the courtroom which required one of the victim's family to be removed. And he felt the trial attorney testified as such a post-conviction that based on that, he felt like that was sufficient evidence as to Schultz's testimony. And I just don't see how you can say that that is an objectively unreasonable conclusion by the state court. But what you're saying, if I'm understanding you, is that the state court was not objectively unreasonable in concluding that that was a strategic decision. Yes, ma'am. I am. Sufficiency doesn't mean that it's effective assistance of counsel not to put additional evidence. I mean, you can have additional evidence that would compel innocence. Wouldn't it be ineffective not to put it on, even if you thought that the jury would acquit with the evidence you already had? Well, you'd have to look at the fact that the attorney was very aware of what this attorney would say, and he was also very aware that this attorney said that based on his review of the evidence in this case, he did not find Schultz's account of that he was the shooter, for lots of reasons, not including the which there were five or six different statements he had given. That's a little bit of contradiction to say this was reasonable for him not to put the additional evidence on because he was reasonably convinced that the jury would find for his client something that he thought was not the case. But we don't put the icing on the cake on the stand because of the same reason. I mean, it's a little bit inherently intentional. I think it would be extremely difficult in evaluating Strickland to say that trial counsel in this case's decision not to put the lawyer on was so far outside the bounds of… That makes sense. Thank you all very much. Thank you, counsel. The case will be submitted. There will be no further questions.